UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MONICA M., <br><br>               Plaintiff, <br><br>v. <br><br>COMMISSIONER OF SOCIAL SECURITY, <br><br>               Defendant. | NO: 1:17-CV-3104-RMP <br><br>ORDER GRANTING PLAINTIFF'S AND DENYING IN PART DEFENDANT'S 'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT, without oral argument, are cross-motions for summary judgment from Plaintiff Monica M.[1], ECF No. 17, and the Commissioner of Social Security (the "Commissioner"), ECF No. 25. Plaintiff sought judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's denial of her claim for supplemental security income. The Court has reviewed the motions, the

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use only Plaintiff's first name and last initial in this decision.

ORDER GRANTING PLAINTIFF'S AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

administrative record, and is fully informed. For the reasons stated below, the Court reverses and remands for an award of benefits.

## BACKGROUND

**A. Plaintiff's Claim for Benefits and Procedural History**

Plaintiff Monica M. was nineteen years old on the alleged date of disability onset, December 14, 2009. Administrative Record ("AR") 113.[2] Plaintiff applied for supplemental security income, under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-34, in April 2010. Plaintiff's application was denied initially and on reconsideration, and by the Administrative Law Judge ("ALJ") after a hearing on February 29, 2012. AR 504–14. The ALJ determined that Plaintiff had severe impairments of "low I.Q. and depression," but would be able to perform her previous employment as a supermarket courtesy clerk or bagger. AR 14, 20. Plaintiff appealed the agency's final decision to the District Court, where Plaintiff and the Commissioner stipulated to reversal and remand to the Social Security Administration, for the ALJ to:

> (1) conduct a new hearing and issue a new decision; (2) reevaluate all of the medical opinion evidence and, if necessary, obtain clarification of an opinion if evidence is discounted; (3) obtain a consultative examination to assess Plaintiff's IQ scores; (4) reevaluate Plaintiff's residual functional capacity and provide appropriate rationale with specific reference to the record evidence in support of the assessed limitations; (5) reevaluate Plaintiff's credibility in accordance with Social Security Ruling 96-7; and (6) if necessary, obtain supplemental vocational expert testimony

---

[2] The AR is filed at ECF No. 10.

ORDER GRANTING PLAINTIFF'S AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

regarding Plaintiff's ability to perform past relevant work or, alternatively, work that exists in significant numbers in the national economy, ensuring vocational expert testimony addresses any conflict with the Dictionary of Occupational Titles in accordance with Social Security Ruling 00-4p.

AR 557.

### B. May 28, 2015 Hearing

Upon remand, ALJ Glenn Meyers heard Plaintiff's claim for benefits at a hearing on May 28, 2015, in Yakima, Washington. AR 415. Plaintiff responded to questions from her attorney, Thomas Bothwell, and Judge Meyers. Vocational expert Leta R. Berkshire, also responded to questions from Judge Meyers and Mr. Bothwell.

Plaintiff left school in eleventh grade when she became pregnant with her first child. AR 537. Plaintiff did not receive special education services while in school. AR 826. Plaintiff recalled that her teachers reacted with frustration to her questions. AR 198. She has since unsuccessfully tried to pass the test to obtain her GED. AR 467–68. Plaintiff has never had a driver's license; she twice tried to pass the written test, and failed. AR 467. Therefore, other people drive Plaintiff to the grocery store, and accompany her inside, as well as provide Plaintiff rides to appointments. AR 466.

Plaintiff's work history is scant. Before Plaintiff had her first child, she worked part-time as a courtesy clerk at a Safeway grocery store. *See* AR 47, 58–59, 118. Plaintiff also worked brief stints at McDonalds and at area orchards, picking or

thinning fruits from trees and sorting fruit in a warehouse. AR 118, 429, 460–63. At the time of the hearing, Plaintiff was living with her boyfriend and staying home to care for her three young children. Plaintiff reported that her mother and sister come to her house nearly every day, so Plaintiff is rarely alone with her children. AR 464. Occasionally Plaintiff's mother or sister watches Plaintiff's children while Plaintiff showers. AR 466.

Although Plaintiff did not report any symptoms of depression at or around the time of the second hearing, she struggled with depression post-partum and at other times in her life. *See* AR 305, 917. Plaintiff attempted suicide in July and September 2011. AR 254, 347. In addition, Plaintiff reported several traumatic experiences, including that she has been in at least two abusive relationships. *See* AR 334–37, 440–42, 1090. Plaintiff also was assaulted by a stranger in a parking lot in 2012 and while taking her trash out from her residence in 2013. AR 1010, 1032–33.

**C. ALJ's Decision**

On June 23, 2015, the ALJ issued an unfavorable decision. AR 394–407. Applying the five-step evaluation process, Judge Meyers found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since she applied for benefits in 2010.

**Step two:** Plaintiff has severe impairments in the form of borderline intellectual functioning and depressive disorder. To reach that conclusion, the

ALJ agreed with the full scale IQ score by Jay Toews, EdD, who conducted psychological with intellectual testing in February 2015, and who posited that the previous IQ testing finding full scale IQ scores of 61 (from March 2010, with Carrie Bishop, MA) and 54 (from September 2014, with Thomas Genthe, PhD) was invalid.  However, the ALJ rejected Dr. Toews' conclusion that Plaintiff has no mental impairments other than rule out symptom exaggeration, finding instead that Plaintiff's "full scale IQ score of 77 and the longitudinal record point to a diagnosis of borderline intellectual functioning." AR 400.  Rather, the ALJ accepted the 2013 finding of State agency consultant Michael Brown, PhD, that Plaintiff has borderline intellectual functioning and affective disorders.  AR 549.

**Step three:** Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  Specifically, the ALJ concluded that Plaintiff's impairments do not meet the criteria of any of the subdivisions of Listing 12.05.  Plaintiff did not meet the criteria of Listing 12.05, subdivision (C), because she "does not have a <u>valid</u> verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." AR 402 (emphasis in original).

**Residual Functional Capacity ("RFC"):** The ALJ found that Plaintiff has the RFC:

> To perform a full range of work at all exertional levels but with the following nonexertional limitations: She can perform unskilled, repetitive, routine work; she can have occasional contact with public, supervisors, and co-workers; she works at her own pace but still meets minimum production requirements of the job: [sic] she is off task up to 10% of the time at work but still meets minimum production requirements of the job.

AR 402.

The ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her borderline intellectual functioning and symptoms associated with depression are not entirely credible. AR 404. The ALJ recounted that records from employers did not substantiate Plaintiff's testimony that her work performance was marred by problems with concentration, memory, and a slow pace. AR 404. Judge Meyers further opined that Plaintiff's lower two IQ scores, which Judge Meyers discounted as invalid, were anomalies associated with brief periods during which Plaintiff was "dealing with postpartum depression and/or the residue of domestic violence." *Id*. Judge Meyers found the overall evidence in the record of Plaintiff's daily activities, including caring for her children and managing household tasks such as preparing meals and cleaning, to indicate that she "is capable of a reasonably high level of functioning, at a level consistent with maintaining unskilled employment." AR 405.

**Step four:** Plaintiff has no past relevant work.

**Step five:** The ALJ concluded that given Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in

ORDER GRANTING PLAINTIFF'S AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6

significant numbers in the national economy that the claimant can perform, including work as a janitor or as a motel housekeeper. Therefore, Plaintiff was not disabled for purposes of the Social Security Act from April 6, 2010, through the date of the ALJ's decision.

AR 394–407.

# APPLICABLE LEGAL STANDARDS

### A. Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court may set aside the Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir.

1965). On review, the court considers the record as a whole, not just the evidence supporting the decisions of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not the reviewing court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making a decision. *Brawner v. Sec'y of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987).

**B. Definition of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a benefits claimant shall be determined to be under a disability only if her impairments are of

ORDER GRANTING PLAINTIFF'S AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

### C. Sequential Process

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 416.920. Step one determines if she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude any gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also* 20 C.F.R.

§ 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of her residual functional capacity and age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see also Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). That burden is met once the claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" that the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ISSUE ON APPEAL

Should the Court credit as true the medical opinions and Plaintiff's testimony to find disability and direct the Commissioner to award benefits, or must the Court remand for further substantive determinations at the agency level?

## DISCUSSION

The parties agree that the ALJ's findings are based on legal error and are not supported by substantial evidence. The parties disagree, however, regarding the extent of the ALJ's error and the appropriate remedy. Therefore, the question before the Court is whether to remand for further administrative proceedings or reverse the ALJ's decision and direct payment of benefits, a determination that is within the Court's discretion. *See Harman v. Apfel*, 211 F.3d 1172 (9th Cir.), *cert. denied* 531 U.S. 1038 (2000).

As a general rule, upon finding that the Social Security Administration has not determined a claimant's benefits application appropriately, "the proper course . . . is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, in limited circumstances, a court may "reverse or modify an administrative decision without remanding for further proceedings." *Treichler v. Comm'r*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The Ninth Circuit has provided a test for determining when a court may credit improperly rejected evidence as true and direct entry of an immediate award of benefits. *See Harman*, 211 F.3d at 1178. First, a court must ask whether "the

ORDER GRANTING PLAINTIFF'S AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

ALJ has failed to provide legally sufficient reasons for rejecting [the particular] evidence." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Next, a court should consider "whether further administrative proceedings would be useful." *Treichler*, 775 F.3d at 1101. Supplementary proceedings generally serve an adequate purpose "where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence may well prove enlightening in light of the passage of time." *Id.* (several internal quotations omitted).

### *Whether the ALJ has provided legally sufficient reasons for rejecting evidence*

The Commissioner acknowledges that the ALJ erred in: (1) accepting Dr. Toews' IQ testing conclusions while declaring Dr. Genthe's IQ determinations to be invalid because it is unclear whether Dr. Toews reviewed Dr. Genthe's report; and (2) failing to provide a basis for finding that Plaintiff would be "off-task" for ten percent of the workday, as opposed to any greater or lesser percentage of time. ECF No. 25 at 10–11. By failing to express why Plaintiff would be off task ten percent of the time, the ALJ erroneously determined Plaintiff's residual functional capacity, which, in turn, compromises the ALJ's determination of what jobs would be available in the national economy that Plaintiff is able to perform.

In addition, the Court finds that the ALJ also did not provide specific, clear, and convincing reasons, supported by record evidence, for rejecting Plaintiff's

ORDER GRANTING PLAINTIFF'S AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

testimony regarding the severity of her symptoms. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (to provide for meaningful review on appeal, and to ensure that claimant's testimony is not rejected arbitrarily, an ALJ must specify which testimony is not credible and what evidence undermines the claimant's complaints). Rather than conflicting with other evidence in the record, Plaintiff's testimony at the second hearing in this matter coheres with the voluminous medical records and offers information beyond what is available from Plaintiff's employment records. The ALJ does not identify specific evidence or reasons for discrediting Plaintiff's recounting of her employment history or the limitations she experiences in her daily life.

### *Whether further development of the record would serve a useful purpose*

The parties agree that the ALJ did not provide a sufficient basis to disregard Plaintiff's IQ results of under 70 as invalid. Rather, the Commissioner argues that the agency should be given an opportunity to clarify the basis for disregarding Dr. Genthe's examination of Plaintiff, which was completed only five months before Dr. Toews' evaluation. However, the Court's prior remand, according to the parties' stipulation, already instructed the agency to "reevaluate all of the medical opinion evidence, and, if necessary, [to] obtain clarification of an opinion if evidence is discounted." AR 556–57. The record in this case already contains two hearings, held more than three years apart, and medical and other records spanning a timeframe of approximately six years with remarkably little change or glaring

ambiguities regarding Plaintiff's circumstances over the passage of time. The time and cost involved in remanding this matter yet again to do something that was required by the language of the first remand, as well as the general law governing Social Security applications, outweighs the limited purpose of a third hearing.

Moreover, the Ninth Circuit has found that "severe delay" has been a reason to exercise discretion in favor of applying the credit-as-true doctrine. *Vasquez v. Astrue*, 572 F.3d 586, 593–94 (9th Cir. 2009). The agency had an opportunity to conduct a thorough, legally sound analysis during the second hearing, but failed to address all of the issues that it was directed to address. Here, the lengthy period of more than eight years since Plaintiff filed her application for Social Security benefits weighs in favor of directing an award of benefits upon reversing the Commissioner's decision.

***Whether, if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand***

Although the Commissioner concedes that the ALJ erred, the Court must nevertheless briefly analyze the record, and the ALJ's treatment of the record, to determine whether a finding of disability would be compelled upon remand. Upon review, the Court finds that the record, without any further development, supports a determination of disability, under either of two analyses.

First, Plaintiff appears to meet Listing § 12.05(C). The Listings, set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 were "designed to operate as a

presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). Once a claimant is found to meet a Listing, no further finding regarding the claimant's ability to perform past relevant work or other jobs is necessary. *Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1995).

Listing 12.05 addresses "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, *i.e.*, the evidence demonstrates or supports onset of the impairment before 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12:05. Subdivision C requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* "In cases where more than one IQ is customarily derived from the test administered, *e.g.*, where verbal performance, and full scale IQs are provided in the Wechsler series, we use the lowest in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P, Appx. I § 12.00(D)(6)(C) (Intelligence tests).

There is no dispute that Plaintiff's impairments manifested before age 22. In addition, the ALJ identified, at step two of the five-step analysis, depression as a severe impairment in addition to borderline intellectual functioning. *See Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir. 1987) (a person with a severe impairment apart from compromised intellectual functioning establishes this prong of Listing § 12.05(C)). Finally, as discussed above, the ALJ did not provide sufficient reasons to

discount Dr. Genthe's measurement of Plaintiff's full scale IQ as 54. Plaintiff also had been evaluated as having a full scale IQ of 61. AR 170.

Even if Plaintiff did not satisfy the requirements of Listing § 12.05(C), there is no serious doubt to be gleaned from the record that Plaintiff is disabled. Plaintiff's highest full-scale IQ measurement in the record is 77. She has not worked full-time at any point in her life. The fact that she has managed well as the primary caregiver for her three young children, while a testament to her persistence and attention as a mother, does not support a conclusion that Plaintiff could successfully transition to substantially gainful employment, in addition to continuing to parent her children. Given the lengthy delay from Plaintiff's first application, and the Commissioner's opportunity to again develop the record according to the parties' stipulated terms of remand, the Court finds that the evidence in the record, particularly with Plaintiff's own testimony and Dr. Genthe's determinations credited as true, compels a finding that Plaintiff is disabled and entitled to the benefits that she seeks.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.
2. Defendant's Motion for Summary Judgment, **ECF No. 25**, is **GRANTED with respect to reversal and remand** and **DENIED with respect to remand for further proceedings**.

///

///

3. This case is **remanded for calculation and award of benefits**.

4. Judgment shall be entered for Plaintiff.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order, enter Judgment as directed, provide copies to counsel, and **close the case**.

**DATED** September 20, 2018.

*s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
United States District Judge

ORDER GRANTING PLAINTIFF'S AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17